NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORAY BAKLAYAN, ET AL., | |
| Plaintiffs, | |
| v. | Civil Action No. 11-03943 (CCC) |
| ALFARO ORTIZ, ET AL., | OPINION |
| Defendants. | |

**CECCHI, District Judge:**

## I. INTRODUCTION

This matter comes before the Court by way of motion to dismiss Plaintiffs Noray Baklayan ("Baklayan") and Talar Baklayan's ("Plaintiff Wife") (collectively "Plaintiffs") Complaint (the "Complaint"). This motion was filed by Defendants Alfaro Ortiz and Stephen Pringle (collectively the "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. For the foregoing reasons, Defendants' motion to dismiss is granted. Counts Two through Seven of Plaintiffs' claims are dismissed without prejudice, and Count Eight is dismissed with prejudice.[1]

---

[1] The Court considers any new arguments not presented by the parties in their papers or at oral argument to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

II.  **FACTS AND PROCEDURAL HISTORY**

Plaintiff Noray Baklayan is a naturalized U.S. citizen. (Compl. ¶ 5.) He is originally from Lebanon, but entered the United States with his family when he was six years old in 1977. (Compl. ¶ 6.) Mr. Baklayan's wife, Talar Baklayan is also a plaintiff in this matter. (Compl. ¶ 9.)

Defendant Alfaro Ortiz is the Director of the Department of Corrections of Essex County, New Jersey. (Compl. ¶ 10.) Plaintiffs assert that, as part of his job, Defendant Ortiz is charged with the responsibilities of training and supervising Essex County correctional officers, and administering and implementing Essex County policies, practices, and customs. (Compl. ¶ 11.) Defendant Ortiz is being sued in his individual capacity.

Defendant Stephen Pringle is the Associate Warden of Custody of the Department of Corrections of Essex County, New Jersey. (Compl. ¶ 12.) Plaintiffs claim that Defendant Pringle's position requires him to oversee all programs and operations applicable to custody, inmate management, and release at Essex County Correctional Facility. (Compl. ¶ 13.) Defendant Pringle is being sued in his individual capacity.

The relevant arrest and detention began on January 7, 2010, at approximately 4 p.m. (Compl. ¶ 21.) Baklayan was driving his vehicle on the New Jersey Garden State Parkway when he was stopped by a New Jersey Highway Patrol Trooper for allegedly talking on a handheld cell phone while driving. (Compl. ¶ 22.) The State Trooper ran a check on Baklayan's driver's license and license plate. (Compl. ¶ 25.) The check revealed an outstanding warrant for Baklayan's arrest in the State of Missouri. (Compl. ¶ 26.) Baklayan was then placed under arrest and transported to the Bloomfield Police Station on the Garden State Parkway in Essex County,

where he was detained for fingerprinting and photographs. (Compl. ¶ 35.) A few hours later, Baklayan was transferred to the Essex County Jail. (Compl. ¶ 34.) The Complaint alleges that jail personnel did not make a note of Baklayan's anti-inflammatory medication. (Compl. ¶ 36.) The Complaint further alleges that Baklayan was denied his anti-inflammatory medication by a correctional officer, and that he was forced to sleep on the floor because there were not enough beds. (Compl. ¶ 40-48.)

The next day, on January 8, 2010, Baklayan's New Jersey counsel telephoned the Essex County Jail to provide notice of representation. (Compl. ¶ 55.) During the same conversation, counsel advised jail personnel of Baklayan's citizenship status, and offered to present Baklayan's valid U.S. Passport in person. (Compl. ¶ 57.) According to the Complaint, jail personnel declined to view Baklayan's passport. (Compl. ¶ 58.)

At 1:20 p.m. on January 8, 2010, the St. Louis County Police Department transmitted an electronic message to the Essex County Jail, stating that the arrest warrant for Baklayan had been recalled by the St. Louis County Court. (Compl. ¶ 59, Ex 1.) At about 2:30 p.m. on the same day, the Office of the Essex County Prosecutor transmitted a facsimile advising the jail that the warrant for Baklayan's arrest had been recalled. (Compl. ¶ 60, Ex. 2.)

On January 9, 2010, counsel personally appeared at the Essex County Jail to request Baklayan's release. (Compl. ¶ 62.) Jail personnel advised counsel that the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") had placed an immigration hold on Baklayan and, therefore, he could not be released. (Compl. ¶. 63.) Counsel repeated his statement that Baklayan was a naturalized U.S. Citizen, and that on account of his citizenship status he could not be subject to any immigration hold. (Compl. ¶ 66.) Counsel also presented Baklayan's valid and current U.S. passport. (Compl. ¶ 67.)

3

On January 11, 2010, after four days of incarceration at the Essex County Jail, ICE sent a facsimile to the jail stating that "a detainer will not be placed on [Baklayan]." (Compl. ¶ 72.) On that same day, Baklayan was released. (Compl. ¶ 73.)

On July 8, 2011, Plaintiffs filed a complaint in the United States District Court for the District of New Jersey, alleging violations of the U.S. Constitution, the New Jersey Constitution, the New Jersey Law Against Discrimination, and state common law. (Compl. ¶ 88, 97, 106, 109, 116, 127, 128.) The Complaint names additional defendants in this matter who are not included in the present motion: the Department of Homeland Security, Immigration and Customs Enforcement; Scott A. Weber, Field Office Director of the Immigration and Customs Enforcement Office of Detention and Removal in Newark, New Jersey; Ladeon Francis, Immigration Enforcement Agent at the Immigration and Customs Enforcement Office of Detention and Removal in Newark, New Jersey; and John Doe, an unnamed law enforcement agent at the Essex County Jail. (Compl. ¶ 10-20.)[2]

### III. STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court is required to accept as true all allegations in the complaint and to view all reasonable inferences that can be drawn therefrom in the light most favorable to the plaintiff. See, e.g., *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). To survive a motion to dismiss, a complaint must state a plausible claim for relief. *Iqbal*, 129 S. Ct. at 1950. The complaint need not provide

---

[2] Plaintiff also references the Essex County Jail as a defendant throughout the Complaint, (Compl. ¶ 20, 75, 108-110, 113), but has failed to include the jail as a defendant in the case.

detailed factual allegations, however, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555. Thus, assuming that the factual allegations in the Complaint are true, those "allegations must be enough to raise a right to relief above a speculative level." *Id.*

## IV. DISCUSSION

Plaintiffs' Complaint includes claims under § 1981, § 1983, § 1985(3), the New Jersey Civil Rights Act and the New Jersey Anti-Discrimination Act, as well as a claim under New Jersey common law. Defendants Ortiz and Pringle move to dismiss Plaintiffs' claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Ortiz Br. 4.) Defendants assert that the Complaint fails to present allegations that they played an affirmative part in any alleged misconduct sufficient to satisfy *Ashcroft v. Iqbal*, 129 S. Ct. 1937. Moreover, Defendants assert that government entities and supervisors cannot be held liable under the federal constitutional claims, specifically, § 1983, solely on the theory of respondeat superior. They contend that in order for liability to attach, there must be proof of personal involvement in the alleged wrongdoings. (Ortiz Br. 5.) Defendants argue that the Complaint should be dismissed as it fails to allege facts supporting the inference that Defendants had "personal involvement" in any alleged misconduct. (Ortiz Br. 5.) Defendants also contend that Plaintiffs' tort claims should be dismissed for failure to file a Notice of Tort Claim, as required by the New Jersey Tort Claims Act (NJTCA), N.J.S.A. § 59:8-8(b).[3] (Ortiz Br. 3.) Defendants do not address each of Plaintiffs' claims individually; rather they address their arguments to the Complaint in its entirety.

---

[3] The NJTCA notice requirement applies only to Count Eight of the Complaint (Plaintiff Wife's state common law loss of consortium claim). The procedural requirements of the New Jersey Tort Claims Act, N.J.S.A. § 59:1-1, "[do] not apply to federal or state constitutional claims

5

Finally, Defendants assert that the claims against Defendants Ortiz and Pringle should be dismissed because the detention was legal. Defendants first argue that, since jail personnel complied with the statutory and regulatory guidelines that govern ICE detainers, the detention was legal. (Ortiz. R. Br. 2.) Section 287.7(d) of the Code of Federal Regulations directs an agency complying with an ICE detainer request to "maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the defendant." Thus, Defendants argue, the detention was "within the federal rules." (Ortiz Br. 5.) Defendants further argue that there was no illegal conduct and no constitutional violation because a 48 hour detention generally satisfies § 1983. (Ortiz Br. 5.) Because the Court is relying on independent grounds to dismiss Plaintiffs' motion, the Court will not make a determination as to the legality of the ICE detention at this time.

### A. Count Two – Violation of 42 U.S.C. § 1981

In Count Two of the Complaint, Plaintiffs assert that "Defendants' actions constitute a violation of the Civil Rights Act, 42 U.S.C. § 1981."[4] (Compl. ¶ 87.) To state a claim under § 1981, a plaintiff must demonstrate that: (1) he is a member of a racial minority; (2) the defendant intended to discriminate against him on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in § 1981, including the right to make and enforce contracts. *Leuallen v. Paulsboro*, No. 99-4353, 2001 U.S. Dist. LEXIS 22631 at *15 (D.N.J.

---

because a state may not abrogate an individual's constitutional rights." *Kirkland v. Morgievich*, No. 04-1651, 2008 U.S. Dist. LEXIS 101472, at *28 (D.N.J. Dec. 15, 2008) (citing *County Concrete Corp. v. Roxbury*, 442 F.3d 159, 174 (3d Cir. 2006) and *Owens v. Feigin*, 394 N.J. Super. 85, 86, 925 A.2d 106 (App. Div. 2007)). The NJTCA does not apply to statutory claims under the New Jersey Civil Rights Act. *Owens*, 394 N.J. Super. at 97. Nor does the notice requirement apply to claims under the New Jersey Law Against Discrimination. *Fuchilla v. Layman*, 109 N.J. 319, 337-38, 537 A.2d 652 (1988).

[4] Count One of the Complaint alleges violations of the Equal Protection and Due Process clauses of the Constitution. (Compl. ¶ 84.) This claim is asserted against Defendants ICE, Weber, and Francis, not Ortiz and Pringle. Accordingly, it will not be addressed by the Court at this time.

Dec. 5, 2001). Plaintiffs do not indicate which Defendants they are referring to, nor do they identify which of Defendants' actions violated § 1981. Plaintiffs offer nothing more than the conclusory statement that "defendants' actions were motivated by racial animosity and by the desire to injure, oppress and intimidate [Baklayan] because of his race, ethnicity, and/or national origin." (Compl. ¶ 88.) They have failed to allege support that Defendants Pringle and Ortiz had a racial motive or were in any way aware of or involved in the decision to detain Baklayan pursuant to the detainer. Without more, their allegation must fail as requiring further factual enhancement. See *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). As such, this allegation is insufficient to support the plausible inference that Defendants violated § 1981.[5]

### B. Count Three – Violation of 42 U.S.C. § 1985(3)

Plaintiffs next assert that Defendants conspired to violate Baklayan's constitutional rights in violation of § 1985(3). (Compl. ¶ 91.) To state a claim under § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

---

[5] Aside from its manifest vagueness, additional pleading deficiencies also plague Count Two. First, Plaintiffs have structured Count Two as a cause of action under *§ 1981*. (Compl. ¶ 87.) It is well settled that *§ 1981* does not provide a private cause of action against state actors. *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989); *McGovern v. City of Philadelphia*, 554 F.3d 114 (3d Cir. 2009) ("parties asserting a violation of Section 1981 by state actors must proceed through section 1983."). Even assuming Plaintiffs are proceeding through *§ 1983*, which is mentioned numerous times elsewhere in the Complaint, Plaintiffs have failed to present factual allegations sufficient to state a claim against Defendants Ortiz and Pringle.

*United Broth. Of Carpenters and Joiners v. Scott*, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983). Once again, Plaintiffs fail to present any factual allegations that suggest the existence of a conspiracy or agreement between Defendants. Plaintiffs also fail to allege any facts that suggest a discriminatory animus on the part of Defendants. Plaintiffs merely state that "[by] reason of their respective positions, status and functions, defendants Ortiz and Pringle's decision, made in concert, were acting [sic] *de facto* to deprive [Baklayan] of equal protection under the law and his right to be free from unreasonable seizures, resulting in violation of his constitutional rights." (Compl. ¶ 91.) Such allegations, devoid of sufficient factual matter, are not sufficient to satisfy the pleading standards. Accordingly, Count Three is dismissed for failure to state a claim upon which relief can be granted.

### C. Count Four – Violation of 42 U.S.C. § 1983 (False Imprisonment)

In Count Four of the Complaint, Plaintiffs allege that Defendants violated Baklayan's constitutional rights by subjecting him to false imprisonment in violation of 42 U.S.C. § 1983. To state a claim under § 1983, a complaint must allege that the defendant had personal and individual involvement in the alleged wrong. *Iqbal*, 129 S. Ct. 1937, at 1948 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, though the official's own individual actions, has violated the Constitution."); *see also Arnold v. State of New Jersey*, No. 03-3997, 2007 U.S. Dist. LEXIS 33982, *12 (D.N.J. May 9, 2007) ("The plaintiff must allege that the defendant had personal involvement in the alleged wrongs, and liability cannot be predicated solely on the operation of respondeat superior.") (citing *Parrat v. Taylor*, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420, n.3 (1981)).

Here, Plaintiffs merely assert that Defendants "exercised or acted in concert to exercise force or the express or implied threat of force to restrain, detain or confine [Baklayan]." (Compl ¶ 101). Plaintiffs do not allege any additional facts that might be relevant to Defendants' individual involvement in the alleged incident, such as whether Defendants were present during Baklayan's detention or whether they spoke with Baklayan or his counsel. Plaintiff's allegation, offered without further factual delineation, is insufficient to support the inference that Defendants participated in the alleged false imprisonment. See *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

A liberal reading of the Complaint could find that Plaintiffs are asserting a theory of supervisory liability.[6] The Third Circuit recognizes two forms of supervisory liability relevant to this action. *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (citing *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). First, as "policymakers," supervisors can be liable for constitutional violations if "with deliberate indifference to the consequences, [they] established and maintained a policy, practice, or custom which directly caused [the] constitutional harm." *A.M.*, 372 F.3d at 586 (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Supervisors can also be liable through "personal direction or ... actual knowledge and acquiescence," however, "allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). But see *Davis v. Danberg*, No. 11-265, 2012 U.S. Dist. LEXIS 2167, *9 (D. Del. Jan 6, 2012) (noting that the Third Circuit has yet to rule on whether *Iqbal* narrowed the standard for supervisory liability in § 1983 suits).

---

[6] Plaintiffs offer brief and generalized descriptions of Defendants' supervisory and management responsibilities. (Compl. ¶ 11, 13.) In Count Four, Plaintiffs assert that Defendants "knew or should have known they were detaining Baklayan without legal authority to do so." (Compl. ¶ 104.)

9

The only facts offered anywhere in the Complaint in support of a supervisory theory of liability are the descriptions of Defendants' jobs: Plaintiffs state that Defendant Ortiz was "charged with ultimate responsibility for the training and supervision of Essex County correctional officers, and for the administration and implementation of the Essex County Department of Corrections policies, practices, and/or customs," and that Defendant Pringle was "charged with overseeing all programs and operations applicable to custody, inmate management and release from Essex County Correctional Facility." (Compl. ¶¶ 11-13.) It would be too great a leap for the Court to infer from these cursory job descriptions that Defendants were somehow aware of and acquiescent to the alleged misconduct, or that they were responsible for the policy or procedure which resulted in the alleged misconduct and deliberately indifferent to its result, and that they are therefore liable under § 1983. Certainly, Defendants' respective positions make it *possible* that they knew of Baklayan's detention, but the Supreme Court has noted that, "where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not shown that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (citations omitted).

### D. Count Five - Violation of 42 U.S.C. § 1983 (Failure to Supervise)

Count Five alleges that Defendants failed to prevent the alleged unconstitutional conduct by "knowingly, recklessly, or with gross negligence" failing to "instruct, supervise, control, and discipline" their subordinates from: (1) unlawfully harassing Baklayan; (2) unlawfully implementing an immigration hold on a U.S. citizen; (3) conspiring to violate Baklayan's rights; and (4) otherwise depriving Baklayan of his rights. (Compl. ¶ 109.) As with Count Four, Plaintiffs fail to allege any personal involvement in the alleged wrongdoing. See *Rode*, 845 F.2d 1195.

As mentioned previously, a supervisor may be held liable under § 1983 when he or she "with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused [the] constitutional harm," *A.M.*, 372 F.3d at 586 (citing *Stoneking*, 992 F.2d at 725), or where the supervisor has knowledge of the incident and acquiesces to it. *Rode*, 845 F.2d at 1207. Plaintiffs have yet to allege any facts suggesting that Defendants knew about Baklayan's predicament or that they established a policy or custom that resulted in constitutional harms to Baklayan. Accordingly, Count Five is dismissed for failure to state a claim upon which relief can be granted.

### E. Count Six - Violations of the New Jersey Constitution and Civil Rights Act

In Count Six, Plaintiffs allege numerous violations of the New Jersey Constitution and the New Jersey Civil Rights Act. (Compl. ¶ 116.) The Complaint states that a "de facto policy" represented by "the actions and/or omissions of the defendants" caused these violations. (*Id.*) Count Six does not identify which Defendants it is referring to, nor does it provide anything more than the conclusory allegation that "illegal, unconstitutional and discriminatory acts . . . constituted acts of a de facto policy to discriminate, use unlawful force, falsely arrest and detain Baklayan." (Compl. ¶ 115.)

The New Jersey Civil Rights Act (NJCRA) provides a private right of action for claims based on "any substantive rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of [New Jersey] State." N.J.S.A. § 10:6-2 (2012). The NJCRA closely tracks the federal civil rights statutes, and courts interpret the statute "in terms nearly identical to its federal counterpart: Section 1983." *Chapman v. New Jersey,* No. 08-4130, 2009 U.S. Dist. LEXIS 75720, *7 (D.N.J. Aug. 25, 2009).

Both the NJCRA and § 1983 premise liability on personal involvement in the alleged misconduct, and neither allow claims premised solely on respondeat superior. *Didiano v. Balicki*, No. 10-4483, 2011 U.S. Dist. LEXIS 41785, *31-32 (D.N.J. Apr. 18, 2011) ("In order to state . . . a claim against a supervisor for the actions of his or her subordinates under either § 1983 or the NJCRA, a plaintiff must allege that the supervisor was involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged.") (quoting *Gilmore v. Reilly*, No. 09-5956, 2010 U.S. Dist. LEXIS 35058, *6 (D.N.J. Apr. 9, 2010) (internal quotations omitted). Thus, to the extent that Plaintiffs have failed to provide sufficient factual allegations to support their claims under § 1983, the same pleading deficiency warrants dismissal of Plaintiffs' NJCRA claims.

### F. Count Seven - Violation of the New Jersey Law Against Discrimination

Count Seven appears to be asserting an equal protection claim, stating that "Defendants policies and practices resulted in Baklayan being subjected to disparate treatment on the basis of race, ethnicity, and/or national origin."[7] (Compl. ¶ 123.) This claim is brought under the New Jersey Law Against Discrimination (LAD). N.J.S.A. § 10:5-1 to -42. Both municipal police departments and individual officers are "public accommodations" within the meaning of LAD. *Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 347, 853 A.2d 288 (App. Div. 2004); *Jobes v. Moorestown Twp.*, No. 03-4016, 2006 U.S. Dist. LEXIS 78918, *30 (D.N.J. Oct. 19, 2006). Plaintiffs making an equal protection claim under the LAD must present facts alleging that the individual Defendants' conduct had a discriminatory effect and that the conduct was motivated by a discriminatory animus. *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002); *Anderson v. County of Salem*, 2010 U.S. Dist. LEXIS 79119, *34 (D.N.J. Aug. 5, 2010) (using

---

[7] Once again, the Complaint fails to identify which Defendant it is referring to.

the equal protection standard to analyze a LAD claim for discriminatory arrest); *Chisolm v. Manimon,* 97 F. Supp. 2d 615, 621 (D.N.J. 2000) (courts use analogous federal antidiscrimination statutes to interpret LAD), rev'd on other grounds, 275 F.2d 315 (3d Cir. 2001); *Rojas v. City of New Brunswick*, Civ. No. 04-3195, 2008 U.S. Dist. LEXIS 57974. *91-92 (D.N.J. June 4, 2008) (noting that legal standards for a claim under the Equal Protection clause and the LAD are the same). To establish a discriminatory effect, a plaintiff must allege sufficient facts to support a finding that he or she was "a member of a protected class and that [he or she] was treated differently from situated individuals in an unprotected class." *Anderson v. County of Salem*, No 09-4718, 2010 U.S. Dist. LEXIS 79119, *34 (D.N.J. Aug. 5, 2010) (citing *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002)).

In the instant case, Baklayan alleges that he was detained pursuant to the ICE immigration hold, and that his detention was due to "his race, ethnicity and/or national origin." Baklayan further alleges that he was "subjected to disparate treatment on the basis of race, ethnicity and/or national origin." It is not entirely clear from the Complaint whether Baklayan is alleging that the ICE detainer itself was lodged with a discriminatory animus, or whether his detention – in accordance with the ICE detainer and despite presentation of a U.S. passport – was conducted with a discriminatory animus. Under either claim, however, Baklayan has failed to allege a sufficient factual basis to support a valid LAD claim against Defendants. Baklayan does not identify any causal connection between his alleged discriminatory detention and either Defendant. Baklayan has failed to provide any facts that would allow the court to infer that either of the Defendants had a discriminatory animus. Baklayan does not identify his protected class, nor does he provide any specific factual allegations to support the plausible inference that

similarly situated persons who are not members of his protected class have been treated differently. This claim is thus dismissed.

### G. Count Eight - Loss of Consortium

Defendants argue that the Plaintiff Wife's loss of consortium claim must be dismissed because she failed to comply with the notice requirement of the New Jersey Tort Claims Act. (Ortiz Br. 3.) The Act requires plaintiffs pursuing a claim "relating to a cause of action for death or for injury or damages to person or to property," absent extraordinary circumstances, to present a notice of claim to the defendant "not later than the ninetieth day after accrual of the cause of action." N.J.S.A. §§ 59:8-8, 59:8-9. All common law tort claims, including both negligence and intentional claims, are subjected to this notice requirement. *Velez v. City of Jersey City*, 180 N.J. 284, 294, 850 A.2d 1238 (2004). Loss of consortium, as a state common law claim, is subject to this notice requirement. See, e.g., *Badalamente v. Monmouth Cty. Prosecutor's Office*, No. 08-2501, 2011 U.S. Dist. LEXIS 53457, *30 (D.N.J. May 17, 2011)). The accrual date under the NJTCA is generally the date of the "accident or incident that gave rise to the injury." *Beauchamp v. Amedio,* 164 N.J. 111, 123, 751 A.2d 1047 (2000).

Plaintiffs offer very few factual allegations in support of the Plaintiff Wife's loss of consortium claim. However, from the Complaint it appears that the Plaintiff Wife's claim accrued when Baklayan's alleged unconstitutional detention commenced on January 8, 2010. This is the date that, according to the complaint, the St. Louis warrant was recalled, and County Jail began holding Baklayan pursuant to the ICE detainer. Pursuant to the New Jersey Tort Claims Act, the Plaintiff Wife was thus required to present a notice of clam by April 8, 2010. Her claim is therefore barred by the NJTCA notice requirement. N.J.S.A. § 59:8-8(a).

## V.  CONCLUSION

For the preceding reasons, Defendants' motion to dismiss is granted, and Counts Two through Seven are dismissed without prejudice. To the extent the deficiencies in such claims can be cured by way of amendment, Plaintiff is granted thirty days to reinstate this matter and file an Amended Complaint solely for purposes of amending such claims. Count Eight, the Plaintiff Wife's claim for loss of consortium, is barred by the New Jersey Tort Claims Act, and is thus not amenable to cure by amendment. Count Eight is therefore dismissed with prejudice. An appropriate Order accompanies this Opinion. To the extent Plaintiff seeks to add any additional claims, a formal motion to amend should be filed in accordance with all applicable local and Federal rules, as well as any scheduling order which may be in place.

DATED: April 5, 2012

_____
CLAIRE C. CECCHI, U.S.D.J.